UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| BRADRICK J. COLLINS,<br>   Plaintiff | § § § § § | |
| V | § § | |
| BAYLOR UNIVERSITY, BAYLOR<br>UNIVERSITY BOARD OF REGENTS,<br>KEN STARR, PRESIDENT, BAYLOR<br>UNIVERSITY GRADUATE SCHOOL,<br>BAYLOR UNIVERSITY SCHOOL OF<br>SOCIAL WORK, DEAN DIANA<br>GARLAND, ASSOCIATE DEAN<br>ROBIN K. ROGERS, ASSISTANT<br>PROFESSOR HELEN K. HARRIS,<br>   Defendants. | § § § § § § § § § § | NO: 1:13-CV-00819-SS |

**DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION FOR TEMPORARY
RESTRAINING ORDER SUBJECT TO DEFENDANTS' MOTION TO DISMISS
AND ALTERNATIVELY, MOTION TO TRANSFER**

**TO THE HONORABLE JUDGE OF SAID COURT:**

COME NOW Baylor University, Baylor University Board of Regents (which is not a proper party), Ken Starr, President, Baylor University Graduate School (which is not a proper party), Baylor University School of Social Work (which is not a proper party), Dean Diana Garland, Associate Dean Robin K. Rogers, and Assistant Professor Helen K. Harris, Defendants herein, by and through their attorneys, and, subject to their Motion to Dismiss, or Alternatively, Motion to Transfer, file this Response to Plaintiff Bradrick Collins' Motion for Temporary Restraining Order and would show the Court as follows:

### I. FACTUAL BACKGROUND

Bradrick Collins ("Plaintiff") applied for admission to Baylor University's Standard Master of Social Work Program ("Standard MSW Program") in 2012 (R. Rogers Aff. ¶ 10). See Affidavit of Associate Dean Robin K. Rogers, Ph.D. ("Associate Dean Rogers") attached hereto as Exhibit 1. The

Standard MSW Program is a graduate level program that requires at least sixty credit hours to be completed in the Baylor University School of Social Work in order to earn the Master of Social Work Degree ("MSW Degree") (R. Rogers Aff. ¶ 9). Plaintiff was admitted to the Standard MSW Program on December 19, 2012 (R. Rogers Aff. ¶ 10). After Plaintiff was admitted to the Standard MSW Program, Plaintiff began to communicate with Associate Dean Rogers regarding the number of credit hours that Plaintiff could transfer in to the Standard MSW Program from prior graduate level coursework that he had completed at Wayne State University (R. Rogers Aff. ¶ 12). Plaintiff also indicated that he wanted to transfer in as much credit as possible in order to minimize the time and expense that would be required for him to obtain an MSW Degree (R. Rogers Aff. ¶ 15).

Initially, Associate Dean Rogers explained to Plaintiff that in Baylor's Standard MSW Program it was not possible to transfer in more than twelve credit hours from Wayne State University that could be counted toward obtaining the MSW Degree and that, after he began the program, he could petition for credit for one additional three hour elective and that such petition would be approved.[1] (R. Rogers Aff. ¶ 13). This would have resulted in Plaintiff being required to complete forty-five (45) credit hours to complete the Standard MSW Program. After further communications with Plaintiff, Associate Dean Rogers considered Plaintiff's desire to minimize the time and expense required to complete the MSW Degree, and Associate Dean Rogers also reviewed the policies of the Baylor School of Social Work as well as the guidelines of the Council on Social Work Education (R. Rogers Aff. ¶ 15). Associate Dean Rogers then offered Plaintiff a new option with regard to obtaining the MSW Degree which could potentially minimize the time and expense for Plaintiff and give him more credit for his prior coursework at Wayne State University (R. Rogers Aff. ¶ 16). Associate Dean Rogers explained to

---

[1] Associate Dean Rogers also explained that beyond the first twelve credit hours that could be transferred, an additional twelve hours could be transferred in, but that Plaintiff would be required to take an equal number of credit hours of MSW Degree courses at Baylor for each of the second twelve hours of credit transferred in, resulting in no net benefit in terms of reducing the total number of credit hours Plaintiff would have to complete at Baylor University in the Standard MSW Program in order to obtain a MSW Degree (R. Rogers Aff. ¶ 13)..

{02559467.DOC / 2}                              PAGE 2

Plaintiff that he could move Plaintiff into Baylor's Advanced Standing Master of Social Work Program ("Advanced Standing MSW Program") (R. Rogers Aff. ¶ 16).

The Advanced Standing MSW Program allows students who already have a Bachelors Degree in Social Work ("BSW Degree") from an accredited undergraduate program, or other reasonably qualified students, to obtain an MSW Degree after taking only thirty-five credit hours in the Baylor University School of Social Work (R. Rogers Aff. ¶ 9). Since Plaintiff could still petition for the additional three (3) hours elective credit, this would allow him to complete the MSW by taking only thirty-five (35) hours rather than the forty-five (45) hours required by the Standard MSW Program. The reason for the reduction in credit hours required in the Advanced Standing MSW Program is that the first year of the Standard MSW Program teaches fundamental information which students with a BSW Degree, or other equivalent educational background, have typically already mastered. Associate Dean Rogers reviewed Plaintiff's transcript, the syllabi for the classes completed by Plaintiff at Wayne State University, and the field evaluation on Plaintiff from Wayne State University, and based on this review determined that Plaintiff's prior credit hours from Wayne State University could be considered approximately equivalent to a BSW Degree (R. Rogers Aff. ¶ 15-16).

A number of e-mails between Plaintiff and Associate Dean Rogers are attached to Associate Dean Rogers' Affidavit. As can be seen from reviewing these e-mails and Associate Dean Rogers' Affidavit, Associate Dean Rogers explained to Plaintiff that the Advanced Standing MSW Program required all entering students to enter as candidates for admission to the Advanced Standing MSW Program (R. Rogers Aff. ¶ 21). During their "candidacy" the students would have to take two "bridge" courses (3 hours each) during the Summer II Term and complete those classes with a "B" or higher grade in order to continue into the Advanced Standing MSW Program (R. Rogers Aff. ¶ 21). Associate Dean Rogers also notified Plaintiff that the stakes were higher in the Advanced Standing MSW Program because there was some risk that candidates would not make a grade of "B" or higher

in both classes (R. Rogers Aff. ¶ 21). Associate Dean Rogers also explained that the Admissions Committee would consult with the professor that taught the two bridge classes after the end of the Summer II Term in order to determine if the students should be admitted into the Advanced Standing MSW Program (R. Rogers Aff. ¶ 21). In his e-mail responses, Plaintiff agreed to move into the Advanced Standing MSW Program (R. Rogers Aff. ¶ 22).

In the Summer II Term of 2013, Plaintiff enrolled and took the two "bridge" classes that are required for entry into the Advanced Standing MSW Program (R. Rogers Aff. ¶ 23). However, Plaintiff did not earn a "B" or higher grade in the two bridge classes, and the Admissions Committee subsequently voted not to admit Plaintiff into the Advanced Standing MSW Program (R. Rogers Aff. ¶ 23-24). Thereafter, Plaintiff initiated the internal appeal process at Baylor University by filing an appeal to the Dean of the Baylor University School of Social Work, Dr. Diana Garland ("Dean Garland") regarding the grades that he received in the bridge classes and also an appeal of the Admissions Committee's decision (R. Rogers Aff. ¶ 25). Dean Garland by letter dated September 18, 2013, has denied Plaintiff's appeal and Plaintiff now has the right to appeal the Dean's decision to the Provost. (R. Rogers Aff. ¶ 25).

Moreover, even after Plaintiff was denied entry into the Advanced Standing MSW Program due to his failure to obtain the grades required in the summer bridge classes, Associate Dean Rogers again offered to Plaintiff the option of continuing to pursue the MSW Degree in the Standard MSW Program by enrolling in Standard MSW Program classes for the Fall 2013 Term, which would also include receiving financial aid and a graduate assistant stipend while enrolled as a full-time student (R. Rogers Aff. ¶ 26). Plaintiff rebuffed Associate Dean Rogers' offer and refused to enroll in classes in the Fall, 2013 term for the Standard MSW Program (R. Rogers Aff. ¶ 26).

Plaintiff filed suit in state court in McLennan County, Texas against all of the Defendants on September 4, 2013 ("Plaintiff's State Case"). A certified copy of the entire case file for Plaintiff's

State Case is attached hereto as Exhibit 2 to this Response. As can be seen from reviewing the documents attached hereto as Exhibit 2, Plaintiff's claims in this suit are almost identical to those previously asserted in the State Case. Furthermore, a lengthy hearing was held on September 13, 2013 by State District Judge Gary Coley on Plaintiff's request for a temporary restraining order against the Defendants, at the conclusion of which Judge Coley entered an Order Denying Application for Temporary Restraining Order. See documents attached as Exhibit 2 hereto.

In Plaintiff's Motion for Temporary Restraining Order, Plaintiff is again requesting that a temporary restraining order be entered against the Defendants causing Plaintiff to be enrolled in multiple classes at Baylor University that started more than three weeks ago. The drop / add date for these classes passed on September 4, 2013 (R. Rogers Aff. ¶ 27). Given the general procedure of Baylor professors to fail a student for missing more than twenty-five percent (25%) of class meetings, and given the classwork, content, and assignments that Plaintiff has already missed, at this point it would be very difficult for Plaintiff to be successful in any classes this Fall even if he were to be forced into classes by court order (R. Rogers Aff. ¶ 27).

## II. LEGAL AUTHORITY REGARDING TEMPORARY RESTRAINING ORDERS

Temporary restraining orders are issued to preserve the status quo of the subject matter of the litigation and to prevent irreparable harm until a hearing on a preliminary injunction can be held. *See Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers*, 415 U.S. 423, 439 (1974). The status quo is considered to be the last peaceable, uncontested state that preceded the controversy. *See LaRouche v. Kezer*, 20 F.3d 68, 74 n.7 (2d Cir. 1994). A party seeking a temporary restraining order pursuant to Rule 65 of the Federal Rules of Civil Procedure has the burden to demonstrate a substantial threat that the party will suffer an irreparable injury if the temporary restraining order is not granted. See Fed R. Civ. Pr. 65(b)(1)(A); *Sampson v. Murray*, 415 U.S. 61, 88-89 (1974). An irreparable injury must be both actual and imminent in order to support a temporary

restraining order. *See Chacon v. Granada*, 515 F.2d 922, 925 (5th Cir. 1975). Temporary restraining orders are an extraordinary remedy that requires an unequivocal showing of the need for the relief to issue. *Valley v. Rapides Parish Sch. Bd.*, 118 F.3d 1047, 1050 (5th Cir.1997); *Mississippi Power & Light Co. v. United Gas Pipe Line Co.* 760 F.2d 618, 621 (5th Cir. 1985). Thus, injunctive relief should only be granted where the movant has "clearly carried the burden of persuasion." *Bluefield Water Ass'n*, 577 F.3d at 252-53; *Anderson v. Jackson*, 556 F.3d 351, 360 (5th Cir.2009).

### III. ARGUMENT AND AUTHORITIES

**A.      Plaintiff Does Not Seek Preservation of the Status Quo**

As set forth above, temporary restraining orders are issued to preserve the status quo. Plaintiff does not seek to preserve the status quo, but rather, to radically change the status of the situation by asking the Court to judicially overrule the grades given to Plaintiff by a professor and to judicially overrule the decisions of an Admissions Committee at Baylor University that voted to deny Plaintiff admission into the Advanced Standing MSW Program and to place him in classes this Fall, forcing the university to award him financial aid, and placing him in a field internship.[2]

Courts are hesitant to intervene in the academic affairs of institutions of higher learning. A university "is an academic institution, not a courtroom or administrative hearing room, and thus should not be weighted down with formalized procedural requirements imposed by actors estranged from the academic environment." *Davis v. Mann*, 882 F.2d 967, 974 (5th Cir. 1989). Judicial interposition in the decisions of universities raises problems requiring care and restraint. *See Epperson v. Arkansas*, 393 U.S. 97, 104, 21 L. Ed. 2d 228, 89 S. Ct. 266 (1968).

Defendants believe that denying Plaintiff's Motion will actually preserve the status quo and

---

[2] It also appears that Plaintiff may be requesting the Court to intervene by judicially changing the degree requirements established by Baylor University with regard to its Standard MSW Program and/or Advanced MSW Program. Plaintiff's Motion is vague and ambiguous in many respects, but it could be interpreted as asking the Court to force Baylor University to transfer in more credit hours than are allowed for in the Standard MSW Program or possibly allow Plaintiff to attempt to complete the Advanced Standing MSW Program despite not making the required grades in the "bridge" classes during the Summer II Term.

maintain the integrity of the academic process at Baylor University. The status quo, which was the last peaceable, uncontested status that existed prior to Plaintiff filing Plaintiff's State Case and this case, is that Plaintiff was denied admission to the Advanced Standing MSW Program and Plaintiff has appealed his Summer II Grades and the Admissions Committee's decision. That appeal of Plaintiff's grades and the admissions decision was denied by the Dean on September 18, 2013, but Plaintiff has the remaining right to appeal that decision to the Provost. However, Plaintiff is seeking Court intervention to radically change the status of the situation by forcing Baylor University to allow Plaintiff to enroll in classes that started over three weeks ago, award financial aid to Plaintiff, and place Plaintiff in a field internship. If the Court issues the requested temporary restraining order, the Court will be judicially overruling a professor's professional judgment regarding Plaintiff's grades and the vote of an Admissions Committee comprised of professional educators. Defendants request that the Court deny Plaintiff's Motion for Temporary Restraining Order and thereby preserve the status quo.

**B.**     **No Imminent Threat of Irreparable Injury to Plaintiff if the TRO is Not Issued**

There is no threat of any imminent, irreparable injury to Plaintiff at this time. There is no actual, imminent harm that will occur to Plaintiff if the Court denies Plaintiff's Motion for Temporary Restraining Order. Plaintiff is not currently enrolled in classes for the Fall, 2013 Term and Plaintiff has not received any financial aid. This entire situation was ultimately brought about by the fact that Plaintiff rebuffed an offer to continue pursuing an MSW Degree in Fall, 2013 by enrolling in classes for the Standard MSW Program.

The fact that Plaintiff is not currently enrolled in classes for the Fall, 2013 Term and the fact that he has not received financial aid does not equate to an imminent, irreparable injury that will occur if a temporary restraining order is not issued. Fall Term 2013 classes have been in session for three and a half weeks. Plaintiff has missed over three weeks of classes. The drop/add date for classes passed on September 4, 2013. Even if Plaintiff were to enroll in classes for the Fall 2013 Term, it

would be very difficult for Plaintiff to pass any classes because the professors at Baylor University normally fail any student who has missed more than twenty-five percent (25%) of class meetings. At this time it would be virtually impossible for Plaintiff to obtain a passing grade in any classes in which he might enroll. There is no threat of actual, imminent irreparable harm to be avoided by issuance of a temporary restraining order.

**C.**     **Plaintiff's Verification and Affidavit Are Inadequate**

Plaintiff has attached a Verification to his Complaint and an Affidavit to his Motion for Temporary Restraining Order which are both inadequate and cannot support the issuance of a temporary restraining order. An application or motion for a temporary restraining order must be accompanied by an affidavit or verification that that is sworn to based on the personal knowledge of the affiant. See *In Re SLK Assocs.*, 166 B.R. 985, 991 (Bankr. S.D. Fla. 1994). In both the Verification and Affidavit, Plaintiff has said that some of the statements he has made in his Complaint and in his Motion for Temporary Restraining Order are based on Plaintiff's information and/or belief, while other statements are based on his personal knowledge, but Plaintiff has not specified which statements are made upon information and/or belief and which statements are made based upon personal knowledge. An application for a temporary restraining order must be based upon personal knowledge of the affiant so that the penalty of perjury shall apply if a temporary restraining order is issued based on false statements of the affiant. For this reason, Plaintiff's Motion for Temporary Restraining Order should be denied.

**D.**     **Plaintiff is Engaged in Forum Shopping**

Defendants assert that Plaintiff has engaged in a blatant example of forum shopping by filing this case in the Austin Division. Plaintiff filed Plaintiff's State Case on September 4, 2013 in the District Court of McLennan County, Texas. A lengthy hearing on Plaintiff's request for a temporary restraining order against Defendants was held on September 13, 2013. During this hearing, Plaintiff

argued to the State District Court that he should be granted a temporary restraining order for essentially the same reasons as Plaintiff is seeking in the present action. After listening to the arguments of Plaintiff and the arguments made by Defendants' attorney, the State District Court on September 13, 2013, denied the Application for Temporary Restraining Order. See documents attached as Exhibit 2.

After being denied the requested temporary restraining order by the State District Court on September 13, 2013, on the morning of September 16, 2013 Plaintiff non-suited his State Case in McLennan County, Texas without prejudice. See documents attached hereto as Exhibit 2. Plaintiff then apparently drove to Austin in order to file this case in the Austin Division. Except for some minor modifications, the Complaint filed in this case is essentially the same as Plaintiff's Petition filed in Plaintiff's State Case requesting essentially the same temporary restraining order that the State Court denied on September 13, 2013.

Defendants request that the Court deny Plaintiff's Motion for Temporary Restraining Order based on an extension of the *Rooker-Feldman* doctrine. Pursuant to the *Rooker-Feldman* doctrine, "lower courts lack subject matter jurisdiction to review the decisions of state courts." *Givens v. Homecomings Financial*, 278 F. App'x 607, 608-609 (6th Cir. 2008). *Rooker-Feldman* applies to bar "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Id.* at 609 (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284, 125 S. Ct. 1517, 161 L. Ed. 2d 454 (2005)).

While previous applications of the *Rooker-Feldman* doctrine may not be directly on point with regard to this case, this case presents a situation where an extension of the reasoning underlying the *Rooker-Feldman* doctrine is appropriate. Although there was no final judgment on the merits in Plaintiff's State Case, the state court heard Plaintiff's request for a temporary restraining order that sought essentially the same relief based on essentially the same allegations. Defendants assert that an

extension of the *Rooker-Feldman* doctrine, or the reasoning underlying that doctrine, would be completely appropriate in this situation, at least with regard to the requested reconsideration of Plaintiff's Application for a Temporary Restraining Order.[3]

### E. Plaintiff's Case is Not Ripe for Determination

Defendants assert that Plaintiff's Motion for Temporary Restraining Order should be denied for the additional reason that Plaintiff has failed to exhaust the administrative remedies available to him at Baylor University. Plaintiff initiated the internal appeal process with regard to his Summer II grades and with regard to the Admissions Committee's decision to deny his admission into the Advanced Standing MSW Program. While the initial appeal has been denied, a further appeal process is still available to Plaintiff and, as a result, there has been no final resolution to that appeal process. Where a plaintiff has not completed the internal appeal and review process of a university regarding academic or disciplinary matters, the case is not ripe for adjudication. See *Texas A&M Univ. v. Hole*, 194 S.W.3d 591, 593 (Tex. App.—Waco, 2006, pet. denied).

WHEREFORE, Defendants Baylor University, Baylor University Board of Regents (which is not a proper party), Ken Starr, President, Baylor University Graduate School (which is not a proper party), Baylor University School of Social Work (which is not a proper party), Dean Diana Garland, Associate Dean Robin K. Rogers, and Assistant Professor Helen K. Harris request that the Court enter an order denying Plaintiff's Motion for Temporary Restraining Order, and that the Court also grant the Defendants all such other and further relief to which they are justly entitled in this case.

---

[3] Defendants also note that in appropriate cases where forum shopping has occurred, Defendants may seek sanctions or costs for actions that amount to forum shopping pursuant to Fed. R. Civ. P. 41(d), but Defendants are not asserting any claims for sanctions or costs at this time because Defendants do not want to waive their concurrent motion that seeks dismissal or transfer of this case based on the fact that Plaintiff has filed this case in an inappropriate and inconvenient Division of the Western District of Texas.

Respectfully submitted,

_____
Roy L. Barrett
State Bar No. 01814000
John A. Powell
State Bar No. 24029775
of
NAMAN, HOWELL, SMITH & LEE, PLLC
400 Austin Avenue, Suite 800
P. O. Box 1470
Waco, Texas 76703-1470
(254) 755-4100
FAX (254) 754-6331

ATTORNEYS FOR DEFENDANTS

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served via certified mail, return receipt requested on Plaintiff Bradrick Collins, P.O. Box 225071, Dallas, Texas 75222 on this 18th day of September, 2013.

_____
Roy L. Barrett